UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS KELLY CUEVAS,<br><br>          Petitioner,<br><br>     v.<br><br>J. SULLIVAN,<br><br>          Respondent. | Case No.   1:18-cv-01281-NONE-JDP<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR A WRIT OF HABEAS CORPUS AND TO DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>OBJECTIONS DUE WITHIN 30 DAYS<br><br>ECF No. 8 |

Petitioner Jose Luis Kelly Cuevas, a state prisoner proceeding without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254.[1] ECF No. 8. Petitioner claims that he received: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) a disproportionate sentence. *See id*. The California Court of Appeal rejected his claim of ineffective assistance of trial counsel on the merits, *see People v. Cuevas*, No. F071956, 2016 Cal. App. Unpub. LEXIS 9031 (Dec. 15, 2016); ECF No. 36-12, and the California Supreme

---

[1] Respondent moved to dismiss the petition as untimely and unexhausted. ECF No. 19. We denied respondent's motion, electing to reach the merits of the petition rather than to determine procedural issues that would have required factual development. ECF Nos. 28, 33; *see Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues . . . so it may well make sense in some instances to proceed to the merits if the result will be the same."). Respondent renewed these arguments in the answer. ECF No. 37 at 2. Petitioner addressed both timeliness and exhaustion in his traverse. ECF No. 41. Although we are satisfied that petitioner exhausted his claims before the state courts, we will refrain from addressing the timeliness of the petition and instead rule on the merits of his claims.

Court denied review of his ineffective assistance of trial and appellate counsel claims in a subsequent habeas petition, *see Cuevas on H.C.*, No. S242714 (Cal. Aug. 23, 2017); ECF No. 36-15 at 1. Petitioner's disproportionate sentence claim was rejected summarily by the California Supreme Court in response to a habeas petition. ECF No. 41 at 113. For the reasons set forth below, we recommend that the court deny the petition.

**I.     Background**

In 2015, a jury sitting in Fresno County convicted petitioner of three counts of sexual intercourse or sodomy with a child under ten years of age and two counts of copulation or sexual penetration of a child under ten years of age. ECF No. 36-12 at 2. Petitioner was sentenced to 105 years to life in state prison. *Id.* at 5.

The court sets forth below the pertinent facts of the underlying offenses, as summarized by the California Court of Appeal. A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

> Defendant's daughter, N., was eight years old when she testified at trial. N. testified that defendant "put his private in mine." She was referring to her "back private," which she uses to "do the restroom." N. testified defendant had done this about seven times, beginning when she was five years old.
>
> N. testified defendant "usually always does that when he's drunk" and fights with her mother. N. testified that it "feels hard" and "hurts" when defendant did this to her, but she did not scream although she was scared. When defendant was done, he would tell N. to "never tell anybody."
>
> N. testified that defendant "put his private one time in my front private." On another occasion, defendant put his fingers inside her "front private" and she could feel him "scratching." This stung and hurt. Defendant also made N. "suck" his "front private" when he was drunk; it "felt nasty" and made N. feel like she was going to choke.
>
> N. never told her mother what was happening because she was scared her mother would not want to live with her anymore and would run away. N. told her sister and later her three cousins. The three cousins told their mother, R.R., who became aware of the incidents in 2014 about a year prior to the trial. R.R. recorded a conversation with N., which was played at trial and a transcript provided. In the tape, N. stated defendant would come to her room and do "something nasty" to her; that defendant makes her "suck his thing" and "he licks his fingers and puts it in her front butt." N.

2

described some of the incidents in detail. While defendant was engaged in these acts against N., he would be watching pornography, which ended up on N.'s iPod.

N. did not want defendant to live with her anymore. N. also told her aunt that defendant told her not to tell anyone or he would hit her with his belt. R.R. described N. as appearing "real scared" that defendant would find out she had told someone about the abuse and he would hit her with the belt.

R.R. told her mother, N.'s grandmother, about what N. stated defendant had done to her. The day after this taped conversation, they took N. to the hospital.

M.R., N.'s mother, testified that when she and defendant fought, she would not allow him to sleep in their bedroom. M.R. and defendant both worked, but not always the same shift and there were times defendant was alone with N. M.R. first became aware of what was happening between defendant and N. when her sister, R.R., told her.

Tonya Franklin, a hospital social worker, interviewed N. After completing her interview with N., which lasted about 30 minutes, Franklin contacted the Firebaugh Police Department and a medical doctor at the hospital.

Firebaugh Police Officer Brett Miller went to the hospital to interview N. Once Miller determined N. knew the difference between a lie and the truth, he proceeded to interview her. N. provided details to Miller of the time, place, and ways in which defendant had touched her inappropriately.

Miller and another officer then interviewed defendant. Defendant initially denied ever getting kicked out of the bedroom he shared with M.R., then later admitted this happened. When he was not sleeping in the same room as M.R., defendant would sleep in N.'s bed, but denied ever touching N. inappropriately.

Jaylene Osena, a nurse practitioner at the hospital, conducted a physical examination of N. N.'s anus and hymen appeared normal. Osena testified she could not determine medically one way or the other whether sexual abuse had taken place. Osena also interviewed N. N. told Osena that defendant put his "privates" in her "behind," mouth, and "front part of privates."

Christina Valencia, another social worker at the hospital, spoke with N. N. told Valencia that "her father had put his privates in her privates."

Firebaugh Police Officer Magda Martinez arranged for an "MDIC interview" of N. The recorded interview was played for the jury and a transcript of the interview included as an exhibit. N. told the interviewer that defendant put his "private" in her "behind" more than five times and would watch "nasty videos" on his phone while he did so; put his finger in her "front private;" put his "private" in

3

> her "front butt;" and forced her to lick and suck on "his private."
>
> David Love, a licensed therapist, testified as an expert on Child Sexual Abuse Accommodation Syndrome. Love testified to each of the five components of the syndrome: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed, conflicting, unconvincing disclosure; and (5) retraction.

ECF No. 36-12 at 2-4.

## II.     Discussion

### A.     Federal Habeas Standard of Review

A federal court can grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).[2] Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See Harrington v. Richter*, 562 U.S. 86, 97 (2011). To decide a § 2254 petition, a federal court examines the decision of the last state court to have issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). In general, § 2254 requires deference to the state court system that determined the petitioner's conviction and sentence.

Under AEDPA, a petitioner can obtain relief on federal habeas claims that have been "adjudicated on the merits in state court proceedings" only if he shows that the state court's adjudication resulted in a decision (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The petitioner's burden is great. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[To gain relief under § 2254(d)(1), the petitioner] must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"); *see Davis v. Ayala*, 576 U.S. 257, 271 (2015) (quoting § 2254(e)(1))  (Under

---

[2] This court has jurisdiction over the petition pursuant to 28 U.S.C. § 2241(a): "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."

4

§ 2254(d)(2), "[s]tate-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'").

If obtaining habeas relief under § 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id*. at 103 (citation omitted). Our habeas review authority serves as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id*. at 102-103.

### B. Ineffective Assistance of Counsel

#### a. Standard of Review

The two-step inquiry from *Strickland v. Washington* governs a federal habeas petitioner's claim of ineffective assistance of counsel. 466 U.S. 668, 687 (1984). First, a criminal defendant must show some deficiency in performance by counsel that is "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* We must ask whether his strategic choices were reasonable under "prevailing professional norms" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 688-89. The entire performance of the attorney must be considered; it is "difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *See Richter*, 562 U.S. at 111 (2011). Second, the defendant must show that the deficient performance caused him prejudice. *See Strickland*, 466 U.S at 687. This requires petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

On habeas review, when filtered through § 2254(d)'s fairminded-jurist standard, the *Strickland* requirements become even more deferential, and we must ask "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. If there is even one reasonable argument that counsel did not violate the *Strickland*

standard—even if the state court has not identified the argument—then the petitioner cannot obtain habeas relief. *See id.* at 106.

### b. Trial Counsel

Petitioner argues that his trial counsel was ineffective because he failed to: (1) call certain experts; (2) present alibi testimony; and (3) present mitigating evidence at sentencing. *See generally* ECF No. 8. The Court of Appeal, in the last reasoned decision on this claim, found no evidence of ineffective assistance of counsel, noting that petitioner's counsel "vigorously cross-examined witnesses; challenged proposed jury instructions; and delivered a thorough closing argument." ECF No. 36-12 at 5. As a result, the court concluded, "the record does not disclose deficient performance," and the conviction must be affirmed. *Id*. We apply the deferential standard of § 2254 to the Court of Appeal's determination.[3]

### i. Expert Testimony

Petitioner argues that his trial counsel was ineffective for failure to call a medical expert, a child sexual abuse accommodation syndrome ("CSAAS") expert, and a child forensic interviewing expert. In general, strategic choices made by counsel are given a "heavy measure of deference." *See Strickland*, 466 U.S. at 690-91 (explaining that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"). Counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Richter*, 562 U.S. at 107. Counsel is not obligated to take futile actions. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). In many instances where an attorney has chosen not to call an expert witness at

---

[3] The Court of Appeal also noted that "the proper way to raise ineffective assistance of counsel is by way of a petition for writ of habeas corpus," ECF No. 36-12 at 5, but nonetheless appears to have resolved the claim on the merits, citing the California Supreme Court's merits determination in *People v. Anderson*, 25 Cal. 4th 543, 569 (2001), which itself cites *Strickland*. In any event, even if we were to apply only the singly deferential standard of *Strickland*—rather than the doubly deferential standard of *Strickland* and § 2254(d)—petitioner's claim would still fail, and our discussion in the main text covers both.

6

trial, "cross-examination will be sufficient to expose defects in an expert's presentation." *Id.* at 111.

Here, petitioner has failed to show how his counsel's decision not to call expert witnesses at trial constituted deficient performance.  Although his counsel did not call experts, he vigorously cross-examined the government's witnesses, exposing weaknesses and inconsistencies in the government's case.  Moreover, petitioner's counsel raised objections throughout trial—ECF Nos. 36-1 at 45, 36-6 at 136, 36-7 at 33—and moved to exclude petitioner's statement that he sometimes slept in his daughter's bed, ECF No. 36-6 at 42.

During cross-examination of the nurse practitioner who conducted the medical examination of the daughter, the jury heard that the medical report revealed no abnormalities in the daughter's rectum or vagina.  ECF No. 36-7 at 110-11.  The nurse practitioner admitted that she could "neither confirm nor deny" that sexual abuse had occurred and confirmed that the medical exam gave "no indication that sexual intercourse had occurred" and did not "indicate whether or not sexual assault happened."  ECF No. 36-7 at 112-14.  Petitioner has failed to show how a rebuttal witness would have cast more doubt on the conclusiveness of the medical examination.

Petitioner's counsel called the relevance and reliability of the government's CSAAS witness' testimony into question.  *See* ECF No. 36-7 at 162-86.  Petitioner's counsel referenced research studies conducted over the past 40 years that question the usefulness of CSAAS in courtroom settings.  *Id*.  He then elicited testimony from the government's CSAAS witness that: CSAAS was never meant to be used as a diagnostic tool, *id*. at 164;  researchers of CSAAS warn against relying on signs of CSAAS as proof of abuse, *id.*; much of the research on CSAAS is unreliable because it was based on interviews that used leading questions, *id*. at 167; answers elicited from the use of anatomically correct dolls in forensic interviews should not be used to draw conclusions that abuse occurred, *id*. at 175;[4] reliance on CSAAS should be limited to explanations for delays in reporting, *id*. at 177; and forensic interviews are subject to human

---

[4] Diagrams were used when interviewing the daughter.

error, *id*. at 186.  Considering that petitioner's counsel elicited this testimony from the government's witness himself—testimony that likely served to weaken the government's case—petitioner has failed to show what more his counsel could have done to discredit the CSAAS expert.

Petitioner's counsel also cast doubt on the reliability of the forensic interviews of the daughter.  He highlighted: discrepancies among the witnesses' testimony concerning the times and locations of the alleged incidents, ECF No. 36-1 at 50, ECF No. 36-6 at 150, ECF No. 36-7 at 237; the briefness of the forensic interviews, ECF No. 36-7 at 13, 30; the possibility that a cousin, not petitioner, exposed the daughter to pornography, ECF No. 36-7 at 80, 85; and the young age of the daughter at the time of the alleged incidents and interviews. ECF No. 36-1 at 58.  A police officer testified that the daughter was "going back and forth on the times of the incidents" during one of the interviews. ECF No. 36-1 at 50.  Petitioner's counsel also cast doubt on the credentials of the interviewers—one of the interviewers testified that she was not formally trained in forensic interviewing and stated that she was "not technically a forensic interviewer." ECF No. 36-7 at 14.  And the aunt, who recorded her interview with the daughter, testified that she had no training in interviewing children and was "not qualified to be interviewing anyone." ECF No. 36-7 at 90-91.  Combining this with the testimony from the CSAAS expert that cast doubt on the reliability of forensic interviews of children in general, petitioner has failed to show his attorney's decision not to call an additional expert was deficient performance.

Moreover, petitioner has failed to show that he was prejudiced from the lack of experts; he has not shown that there is a "reasonable probability" that the "result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Although the jury was presented with evidence that called the reliability of the daughter's testimony into question, the jury was also presented with testimony from multiple family members, police officers, and mental health workers that the daughter relayed to them the same general description of the alleged incidents.  Indeed, petitioner's counsel's choice to forego calling experts may have prevented *unfavorable* evidence from being presented to the jury; petitioner offers no reason to think otherwise.  Lawyers have "no duty to inject evidence likely to open the door to additional evidence that

8

would be harmful." *Stanley v. Schriro*, 598 F.3d 612, 636-37 (9th Cir. 2010); *see Bell v. Cone*, 535 U.S. 685 (2002) (holding that counsel made a reasonable strategic decision to waive closing argument because it prevented unfavorable evidence from being presented to the jury). It is possible that petitioner's counsel feared that any potential experts would have been discredited by the prosecution on cross-examination, damaging his case. Petitioner's claim should be denied.

ii. **Alibi Testimony**

Petitioner argues that his trial counsel was ineffective in failing to present evidence that he worked the same shift as his wife during one of the alleged incidents of abuse. However, this evidence was twice presented to the jury: on cross-examination by petitioner's counsel, the daughter testified that her mom and dad worked the same shift at the same company, ECF No. 36-6 at 97, and on direct examination by the government, the mother testified that she and petitioner worked the same shift at the same company during the final year in which one of the alleged incidents occurred, *id*. at 107. Therefore, petitioner's claim has no merit and should be rejected.[5]

### iii. Mitigation Evidence at Sentencing

Petitioner argues that his counsel was ineffective for failing to present mitigating evidence at sentencing. As an initial matter, there is no U.S. Supreme Court precedent holding that a criminal defendant has a constitutional right to present mitigating evidence during sentencing in a noncapital case. *See Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991) (rejecting a claim that a mandatory life sentence was cruel and unusual because the trial court did not consider mitigating factors); *United States v. Gomez*, 472 F.3d 671, 674 (9th Cir, 2006) (noting that the U.S. Supreme Court has declined to extend the right to present mitigating evidence in capital cases to non-capital cases).

And contrary to petitioner's assertion, his counsel presented mitigating evidence at sentencing. At sentencing, petitioner's counsel argued that certain aggravating factors should be

---

[5] Even if petitioner's counsel had failed to elicit this testimony altogether, we could not find deficient performance or prejudice. Petitioner was convicted of six counts of sexual abuse and the omitted testimony would have only provided a potential alibi for one of the incidents. The mother testified that petitioner was home alone with the daughter regularly for much of the time during which the alleged incidents occurred, ECF No. 36-6 at 108, and that petitioner took showers with the daughter while she was at home, ECF Nos. 36-1 at 50, 36-6 at 118. Petitioner's

1  removed from petitioner's probation report, highlighted petitioner's recidivism score of zero, and
2  noted that his only criminal history was a DUI from 2008. ECF No. 36-4. Petitioner's counsel
3  presented petitioner's sister as a character witness, who told the judge that petitioner is "a good
4  person" and that "they believe in him." ECF No. 36-4 at 23-25. The judge stated that she
5  reviewed the probation report, which revealed that petitioner had a low level of education, seven
6  years of continual work history, no juvenile record, minimal criminal history, and never served
7  time in jail. ECF No. 36-4. The judge also stated that she considered all relevant aggravating and
8  mitigating factors prior to imposing the sentence. And petitioner, as distinct from his attorney,
9  had the opportunity to present mitigating evidence on his own behalf—but did not. Petitioner has
10 failed to show that his counsel's performance was deficient.

11 Moreover, petitioner has failed to show how he was prejudiced by his counsel's actions.
12 The probation report recommended the maximum statutory sentence for each of his crimes of
13 conviction and listed no mitigating factors.[6] ECF No. 36-4. Petitioner has not identified for the
14 court any mitigating evidence that his counsel could have presented. *See Williams v. Taylor*, 529
15 U.S. 362, 367 (2000) (finding ineffective assistance of counsel where counsel failed to present
16 "voluminous" evidence favorable to the petitioner). Petitioner has failed to show a reasonable
17 probability that a different outcome would have resulted. His claim should be denied.

### c. Appellate Counsel

19 Petitioner argues that his appellate counsel was ineffective for failure to file anything
20 other than a *Wende* brief on his behalf.[7] *See, e.g.*, ECF No. 41 at 13. Because the California
21 Supreme Court summarily denied review of petitioner's claim, *id.* at 113, we assume that the state

---

counsel could have reasonably determined that the evidence in question would have done nothing to help petitioner's case, or perhaps could have hurt his case by highlighting his lack of an alibi for the five other incidents.

[6] The trial judge sentenced petitioner in accordance with the recommendation of the probation officer.

[7] On direct appeal, petitioner's counsel filed a *Wende* brief. *See People v. Wende*, 25 Cal. 3d 436 (1979) (directing that, where appellate counsel can find no non-frivolous arguments to present on appeal, counsel is not required to make any legal arguments, but must present a brief which assists the court in understanding the facts and legal issues of the case; the court then independently reviews the entire record). The Court of Appeal invited petitioner to submit a supplemental brief addressing his claims and subsequently affirmed his conviction.

court denied the claim on the merits, and accordingly will conduct an independent review of the record to determine whether the state court's final resolution of the case constituted an unreasonable application of clearly established federal law. *See Greene v. Lambert*, 288 F.3d 1081, 1088-89 (9th Cir. 2002).

A defendant's right to appellate representation does not include a right to present frivolous arguments to the court. *See McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436 (1988); *Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992) (explaining that appellate counsel cannot be found ineffective for failing to raise an argument that would not have been successful). No U.S. Supreme Court decision holds that a "defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Here, the *Wende* brief signaled that appellate counsel was unable to find a non-frivolous legal argument to advance on appeal. *See Wende*, 25 Cal. 3d 436 (1979). In the brief, petitioner's appellate counsel outlined the relevant facts and legal issues of the case, as required by *Wende*. Giving a "heavy measure of deference " to petitioner's counsel's strategic decision to file a *Wende* brief, *Strickland*, 466 U.S. at 690-91, and recognizing that counsel had no duty to raise frivolous arguments, *Barnes*, 463 U.S. at 751, petitioner has failed to show that his appellate counsel's performance was deficient.

And petitioner has failed to show that he was prejudiced by his attorney's actions. After petitioner's counsel filed the *Wende* brief, the Court of Appeal provided petitioner with the opportunity to present his claims in a brief pro per. ECF No. 36-10. Petitioner did so. ECF No. 36-11. The Court of Appeal conducted an independent review of the record and considered petitioner's claims, finding that "that no reasonably arguable factual or legal issues exist[ed]." ECF No. 36-12 at 6. Petitioner then had the opportunity to present his claims before the

California Supreme Court, which summarily denied his claim. Petitioner's claim should be rejected.

### C.  Disproportionate Sentence

Petitioner argues that his sentence is disproportionate to other sentences for similar conduct. Because the California Supreme Court summarily denied review of petitioner's claim, *id*. at 113, we assume that the state court denied the claim on the merits, and accordingly will review the claim under the directive of *Greene*. *See Greene*, 288 F.3d at 1088-89.

The Eighth Amendment prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, including punishments that are "disproportionate to the crime committed," *Solem v. Helm*, 463 U.S. 277, 284 (1983). However, "strict proportionality between crime and sentence" is not required. *Harmelin,* 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in judgment). "Rather, [the Eighth Amendment] forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* (quoting *Solem*, 463 U.S. at 288). "[S]uccessful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980); *Harmelin*, 501 U.S. at 1005 (noting that it is only the "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality").

No U.S. Supreme Court case supports petitioner's disproportionality claim. The Court has repeatedly upheld life sentences for crimes less serious than those at issue here. *See, e.g.*, *Harmelin*, 501 U.S. at 961 (upholding a sentence of life without the possibility of parole for a first-time offender convicted of possessing 672 grams of cocaine); *Rummel*, 445 U.S. at 276 (upholding a life sentence imposed under a recidivist statute where the three felonies at issue were passing a forged $28.36 check, fraudulent use of a credit card to obtain $80.00 worth of goods or services, and obtaining $120.75 by false pretenses); *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (upholding a sentence of fifty years to life under California's three-strikes law for stealing nine videotapes).

Moreover, we are to "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to

the discretion that trial courts possess in sentencing." *Solem*, 463 U.S. at 290. In general, if "the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds." *Belgarde v. Montana*, 123 F.3d 1210, 1215 (9th Cir. 1997). Petitioner's sentence does not exceed the statutory maximum set by the California legislature. Petitioner was sentenced to a term of 25 years to life for each of his convictions under California Penal Code 288.7(a)—the term set by the legislature. Likewise, petitioner was sentenced to 15 years to life for each of his convictions under California Penal Code 288.7(b)—again, the term set by the legislature. *See* ECF No. 36-12 at 4-5.

Moreover, we decline to entertain petitioner's request to compare his sentence to other sentences for similar crimes. Where the nature of a petitioner's crime is serious, "no such comparative analysis is necessary."[8] *Harmelin*, 501 U.S. at 1004; *see United States v. Meiners*, 485 F.3d 1211, 1213 (9th Cir. 2007) (holding that no "inter- and intra-jurisdictional analysis" of comparative sentences was necessary in a child pornography case because the crime was "significant" and causes "grave harm to society"). Child sexual abuse is a serious crime that causes long-lasting harm. *See, e.g.*, *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) ("The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people."); *McPherson v. Paramo*, No. SACV 16-170-AB (GJS), 2017 U.S. Dist. LEXIS 219009, at *110 (C.D. Cal. Dec. 5, 2017) (noting that "the psychological and emotional injuries caused by child molestation can remain well after any physical injuries have healed and can be life-long").

---

[8] Even so, petitioner's sentence is not disproportionate when compared to other sentences for similar crimes in California. *See, e.g.*, *People v. Sierra*, No. E0519332012, Cal. App. Unpub. LEXIS 4221, at *21 (2012) (holding that a sentence of 90 years to life was not disproportionate where defendant was convicted of six counts of child sexual abuse); *People v. Meneses*, 193 Cal. App. 4th 1087, 1093-94 (2011) (holding that a sentence of 15 years to life sentence for a defendant convicted of a single lewd act with a 12-year-old who became pregnant not cruel and unusual); *People v. Nichols*, 176 Cal. App. 4th 428, 437 (2009) (holding that a sentence of 25 years to life for failure to register as a sex offender within five days of moving did not constitute cruel and unusual punishment); *People v. Retanan*, 154 Cal. App. 4th 1219, 1231 (2007) (holding that a sentence of 135 years to life for conviction of 17 sexual offenses against a minor was not cruel and unusual).

Because petitioner has failed to show that his sentence is grossly disproportionate to his crimes of conviction, he has failed to show that the California Supreme Court's rejection of his claim is an unreasonable application of clearly established federal law. Therefore, his claim should be denied.

### III. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing § 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, petitioner has not made a substantial showing of the denial of a constitutional right. Thus, the undersigned recommends that the court not issue a certificate of appealability.

### IV. Findings and Recommendations

The undersigned recommends that the court deny the petition for a writ of habeas corpus, ECF No. 8, and decline to issue a certificate of appealability. These findings and recommendations are submitted to the U.S. District Court judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days of the service of the findings and recommendations, petitioner may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document must be captioned "Objections to

Magistrate Judge's Findings and Recommendations." The district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated: September 30, 2020

_____
UNITED STATES MAGISTRATE JUDGE

No. 206.